STATE of Missouri, Plaintiff-Respondent,

v.

Ann G. URHAHN, Defendant-Appellant.

No. 42851.

Missouri Court of Appeals, Eastern District, Division One.

July 28, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Stephen J. Nangle, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., John C. Reed, Kristie Green, Asst. Attys. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

DOWD, Judge.

Ann G. Urhahn, defendant herein, appeals her conviction by a jury of leaving the scene of a motor vehicle accident. § 577.-060 RSMo 1978. Defendant was found not guilty of manslaughter and two other counts of leaving the scene of motor vehicle accidents. Defendant was sentenced to 90 days in jail. Defendant appeals. We affirm.

Ann G. Urhahn and Dennis Urhahn were divorced in 1978 with Dennis Urhahn receiving custody of their two minor children. On July 4, 1979 at approximately 9:00 a.m. Ann Urhahn picked up the two children from Dennis Urhahn's residence on Echo Lane. She returned the children later that evening at approximately 10:30 p.m. Defendant was driving a borrowed pickup truck which she parked on the street. Leaving the motor running, the defendant handed the children to Dennis Urhahn and a neighbor. An argument arose between the defendant and the decedent Kimberly Russell, Mr. Urhahn's fiancee, over whether the defendant was late in returning the children. Miss Russell and the defendant then challenged each other to a fight. After a twenty minute argument involving other neighbors, the defendant said she was leaving and drove away. After driving eight or ten feet the defendant attempted to close the door to the truck and found Russell hanging onto it. The door swung in and out as Russell attempted to grab the wheel. The defendant continued driving up Echo Lane swerving back and forth across the

road. Dennis Urhahn and the other neighbors testified they lost sight of the truck at the crest of the hill. Wayne Wenzinger testified he was sideswiped by a truck that was swerving back and forth across the road and that he heard a subsequent crash. Both Ernest Bressie and John Dierbak testified to having their cars parked on the 9400 block of Echo Lane that evening, that they heard crashes and found their cars had been damaged. The defendant knew Miss Russell was unconscious after the first impact, and that her head was down, but does not remember when she fell off the truck. Defendant then picked up her boyfriend whom she had left at a Majic Market. He was shocked to see the truck door damage and the defendant told him what had happened saying, "She's hurt bad. ... We have to get out of here." They then proceeded to his parents' home in South County. She then spoke with her sister and the police. The defendant was arrested and advised of her *Miranda* rights on three separate occasions. She indicated she understood them the first two times but not the third. She also indicated they contained the same language all three times. The defendant refused to sign the waiver but elected to make an oral statement to Officer Papish to the effect that she had been trying to get away, she did not want any trouble, but Russell would not let her leave. At no time did the defendant request the presence of an attorney. Defendant was never abused or harmed in any way by the officers.

On this appeal, defendant contends the trial court erred in the following respects:

1) Refusing to sustain appellant's motion to suppress statements;

2) Failing to sustain defendant's motion for judgment of acquittal at the close of all the evidence;

3) Refusing to submit Instruction No. "B" 2.40 M.A.I. CR2d dealing with conduct justifiable as an emergency measure;

4) Failing to set aside the verdict as rendered in Count II due to its legal and logical inconsistency with the verdicts rendered in Counts III and IV.

■ The defendant first contends that statements made to the interrogating officer were involuntary as she had not waived her right to silence or her right to counsel. We disagree. Evidence at the suppression hearing supports the assertion that the defendant voluntarily waived her *Miranda* rights. It is clearly established that a waiver of those rights need not be by an express declaration and that the question of waiver must be determined on the particular facts and circumstances surrounding the case. A waiver can be inferred from the actions and words of the person interrogated. *State v. Ross*, 606 S.W.2d 416 (Mo.App.1980); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). In this case the defendant was advised of her *Miranda* rights on three separate occasions. She indicated that she understood them two out of the three times, but refused to sign the waiver form. However, the defendant did agree to make an oral statement.

■ In effect, she told the officer that she had been trying to get away and that she did not want any trouble but that she [Russell] would not let her leave. In *State v. Hull*, 595 S.W.2d 49, 51 (Mo.App.1980) the defendant was advised of his rights and refused to sign the waiver, but did elect to make an oral statement. The court held that "a refusal to sign such a written declaration does not necessarily preclude an oral or an implied waiver." In this case, the appellant's willingness to make an oral statement clearly indicates an implied waiver of her right to silence. See *State v. Sterling*, 536 S.W.2d 843 (Mo.App.1976); *State v. Clark*, 596 S.W.2d 747 (Mo.App. 1980).

In further support of her contention that the statements were involuntary, defendant relies on the fact that the interrogation continued after she had requested counsel. The record does not support this assertion. The defendant testified that she was ad-

vised of her rights and that her request was merely an inquiry as to her right to have counsel.

Defendant also asserts that she was psychologically coerced into making the statements. We find no merit to this contention. The test of voluntariness of a confession or statement is whether or not the defendant's will was overborne to such a degree by the law enforcement officers that the defendant was deprived of a free choice to admit, to deny or to refuse to answer any questions. *State v. Crowley*, 571 S.W.2d 460, 464 (Mo.App. 1978); *State v. Higgins*, 592 S.W.2d 151, 158 (Mo.banc 1979). Here the defendant testified that Officer Papish told her "that the only way I could help myself to get out of trouble was to speak to him then." A confession cannot be extracted by any direct or implied promises . . . nor by the exertion of any improper influence. However, the promise of anything to the accused which will exclude the admission must be positive in its terms and clear in its implications. *Bram v. U.S.*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *State v. Hughes*, 596 S.W.2d 723 (Mo.banc 1980). The defendant also testified that she was not punished or abused by the officers. Since the record fails to reflect any substantial evidence of coercion or duress or of promise of leniency or reward, and Officer Papish's comment appears to be a mere expression of opinion, the statements must be deemed voluntary.[1]

Finally the defendant asserts that her emotionally distraught state and the fact that the interrogation occurred in the early morning hours serve as special circumstances indicating her waiver was involuntary. We find no merit to this contention. See, *State v. Sterling, supra; State v. Jones*, 218 Kan. 720, 545 P.2d 323, 327 (1976).

"Totality of the circumstances" as the defendant urges this court to consider

means a careful and conscientious appraisal of all the evidence. The burden is on the state to show that the statements were voluntarily made. Upon a careful review of the record this court finds that the state met its burden. The defendant was advised of her rights, and declined to exercise them when she made her oral statements. Defendant made no request for counsel. When she refused to say anything else defendant's right to cut off questioning was scrupulously honored. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Upon these facts this court finds that the defendant had voluntarily, knowingly, and intelligently waived her right to silence and to counsel.

Defendant's second point of error is that the trial court failed to sustain her motion for judgment of acquittal as the state failed to make a submissible case. In determining whether a submissible case was made, we consider the evidence and all favorable inferences to be drawn therefrom in the light most favorable to the state and disregard all evidence and inferences to the contrary. *State v. Shaw*, 602 S.W.2d 17, 19 (Mo.App.1980). The record reflects testimony which demonstrates the defendant was operating the truck. Wayne Wenzinger testified he saw the truck swerving back and forth, that it hit his vehicle, and that he heard a subsequent crash. Bressie, whose car was located some fifty to seventy-five feet west of Wenzinger's testified his car had been damaged. The defendant stated to Officer Papish that she was trying to get away and that Miss Russell would not let her leave. She later testified the truck was swerving back and forth across the road. Upon this evidence the jury could infer that the defendant was the operator of the truck. Defendant argues the state's case is wholly circumstantial and therefore subject to a more stringent review. We disagree

---

1. See *Harvey v. State*, 611 S.W.2d 762 (Ark. 1981) where a police officer told the defendant that it would probably help defendant if he went ahead and told the truth it was held to be a mere expression of opinion and where it was not coupled with innuendo or subtleties calculated to deceive the defendant, the confession would be voluntary and admissible.

with defendant's contention. Where the evidence is partially direct and partially circumstantial the test as to submissibility is not that of a purely circumstantial evidence case, *State v. Jones*, 594 S.W.2d 932, 934 (Mo.1980) and in such a case it is not necessary to give a circumstantial evidence instruction, *State v. Baldwin*, 571 S.W.2d 236, 240 (Mo.banc 1978). The statements made by the accused are direct evidence of her guilt. *State v. Rocha*, 526 S.W.2d 834, 836 (Mo.App.1975). Our test on appellate review is whether the evidence is sufficiently substantial to make a submissible case. Substantial evidence means evidence from which the triers of facts could find the issue in harmony therewith. *State v. Clark*, 596 S.W.2d 747, 749 (Mo.App.1980). Here, we conclude there is sufficient evidence from which the jury could reasonably find the defendant guilty of the charge of leaving the scene of an accident.

▆▆▆ Inherent in defendant's challenge to the evidence is her claim that the direct evidence was insufficient to establish control of the vehicle by the defendant during the time of the impact as required by § 304.010, RSMo 1959. We disagree. The defendant testified Kimberly Russell was unconscious after the first collision and that she was not sure when Miss Russell fell off the truck. Therefore, the jury could have found that Miss Russell could not have been fighting for the wheel, thus leaving defendant in sole control of the vehicle. In *Hay v. Ham*, 364 S.W.2d 118 (Mo.App.1962) when the defendant exerted the force that started the automobile she immediately became a person who was in actual physical control of a vehicle. Defendant here testified she left the motor running, actually said "move I'm leaving" and then drove eight or ten feet before she realized Miss Russell was on the truck. Finally, the defendant's testimony as to Miss Russell's fight for the wheel only tends to prove the accidents may not have been her fault. However, fault in leaving the scene of an accident is irrelevant. § 577.060 RSMo 1978.

Here the evidence showed that while defendant was operating a motor vehicle with the decedent hanging onto the door, it collided with another vehicle with decedent becoming unconscious and falling off the truck. The evidence showed that the defendant did not stop, picked up her boyfriend and told him "She's hurt bad.... We have to get out of here." Therefore, we find that the state made a submissible case and that the trial court did not err in failing to sustain defendant's motion for acquittal.

▆▆▆ Defendant's third point of error is that the trial court erred in refusing to submit Instruction No. B, MAI–CR2d 2.40 dealing with conduct justifiable as an emergency measure. MAI–CR 2.40 in pertinent part reads:

"First,

that through no fault of the defendant imminent danger of injury to herself arose that necessitated her leaving the intersection of Echo Lane and Woodson Road.

Second,

that the conduct of defendant as submitted in instructions No. 8, 10, 12 was necessary as an emergency measure to avoid such injury."

This instruction is only available when the court determines that the claimed facts and circumstances if true, are legally sufficient. MAI–CR2d 2.40. The defendant argues that the trial court in denying instruction "B" invaded the province of the jury by making a determination of fault. We find no merit to this contention. The court need only look to whether or not substantial evidence is contained in the record to warrant the instruction. *State v. Lacy*, 573 S.W.2d 137 (Mo.App.1978). This instruction is only available when the defendant's conduct is occasioned by a situation which developed through no fault of the defendant. Here, the defendant testified that she participated in a public argument with Miss Russell, challenged Miss Russell to a fight and

that she did not stop when she saw Miss Russell hanging onto the door of the truck. The defendant also testified that she saw Miss Russell was unconscious. It is clear that evidence exists which could lead the jury to determine that the defendant at least contributed to the situation. Defendant also asserts that her fear of danger to herself constitutes justification. It has been clearly established that failure to remain at the scene of an accident may or may not be excused depending upon the reasonableness of the driver's apprehension of danger. *State v. Burris*, 10 Or.App. 297, 500 P.2d 265 (1972). Defendant testified she was in fear of the Overland police department due to the decedent's relationship with some of the officers and that she feared reprisals from Dennis Urhahn and his friends. The record does not support these contentions. There is no evidence of any threats or attempts at assault against the defendant by Dennis Urhahn and his friends, nor is there any evidence of abuse by the Overland police department.

■ The defendant also testified that she knew Miss Russell was unconscious. There was no reasonable basis for defendant's fear. Therefore, we find that the trial court did not err in refusing to grant said instruction since there was insufficient evidence to support the defendant's assertion that she was in imminent danger of injury. Furthermore, the evidence shows that the situation resulting in the defendant leaving the scene of the accident developed to some degree through the defendant's fault. The trial court did not invade the province of the jury but merely determined that the facts and circumstances asserted by the defendant were legally insufficient under the instruction and properly refused to submit Instruction B, MAI–CR2d 2.40.

■ There is no merit to defendant's claim that there was no logical basis for a finding of guilt on Count II (leaving scene of an accident) and innocence on Counts III and IV (the other two counts of leaving the scene of an accident) when all charges were based upon essentially the same evidence and the proof as to all three counts was dependent upon the credibility of such evidence. This court has held that such consistency is unnecessary as each count is regarded as if it was a separate indictment. *State v. Voyles*, 561 S.W.2d 697 (Mo.App. 1978); *Dunn v. U.S.*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

■ Relying on *State v. Headrick*, 179 Mo. 300, 78 S.W. 630 (1904) defendant argues that the inconsistency demonstrates a materially inconsistent factual determination with no rational explanation. We disagree. There was a rational basis for the jury's verdicts. The instruction submitting the three counts of leaving the scene of an accident required a finding that the defendant was operating the vehicle at the time of the accident. Defendant herself contends that there is some question as to whether she or Miss Russell was operating the vehicle at the time of the accidents, since Miss Russell kept grabbing the wheel. The defendant also testified that after the collision with the first vehicle, she noticed Miss Russell was unconscious. From the evidence presented a jury could have reasonably concluded that the defendant was in control at the time of one accident and not at the time of the others. Juries frequently convict on some counts and acquit on others, not because they are unconvinced of guilt but simply because of compassion and compromise.[2] *State v. McCall*, 602 S.W.2d 702 (Mo.App.1980). Furthermore, an inconsistent verdict among the varied charges of a multiple count indictment does not require a reversal provided there is sufficient evidence to support the jury's finding of guilt. *State v. O'Toole*, Mo. Court of Appeals-

2. See *State v. Jenkins*, 510 S.W.2d 491 (Mo. App.1974) where the defendant was charged with having robbed two separate individuals at the same time and place. Jury verdict finding

him guilty of one but not the other was as to the acquittal favorable to the defendant and he could not complain that the verdict was inconsistent.

Eastern District, 619 S.W.2d 804 (1981). The doctrine of collateral estoppel as urged by defendant is not applicable and therefore will not be discussed.

The judgment is affirmed.

STEPHAN, P. J., and STEWART, J., concur.